# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

SERGIO ALBERTO BENCOMO,

    Plaintiff,

v.                                                                                            Civ. No. 14-1114 SCY/KBM

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants Board of County Commissioners of the County of Bernalillo ("the County"), Bernalillo County Metropolitan Detention Center ("MDC"), and Violette Gonzales's Motion for Partial Summary Judgment No. II. ECF No. 40. In this motion, Defendants argue that they are entitled to summary judgment on Plaintiff's claims for Negligence (Count IV) and Deprivation of Rights, Privileges and Immunities (Count VI), both of which were brought pursuant to the New Mexico Tort Claims Act ("NMTCA"), NMSA 1978, § 41-4-1 to -30 (1976, as amended through 2015). Having reviewed the parties' briefing, the relevant law, and otherwise being fully advised, the Court concludes that Defendants' motion for summary judgment on Counts IV and VI is well-taken and shall be **granted**. Accordingly, Counts IV and VI are dismissed with prejudice.

## I. BACKGROUND[1]

      Plaintiff Sergio Alberto Bencomo's claims in this lawsuit arise from his booking into the MDC on two warrants by Defendant Violette Gonzales, a Corrections Technician employed by

---

[1] Except as otherwise noted, the following facts are undisputed.

1

the facility. The parties do not dispute that the first warrant was for Plaintiff and charged him with receiving or transferring stolen motor vehicles, receiving stolen property, and one count of aggravated fleeing of a law enforcement officer. ECF No. 39-4. Nor do the parties dispute that the second warrant was for someone other than Plaintiff. This second warrant charged an individual named 'Calletano Bencomo' with criminal sexual penetration of a minor in the first degree, criminal sexual contact, and kidnapping. ECF No. 39-3. Gonzales booked Plaintiff into the MDC on these two warrants on November 3, 2012, and Plaintiff remained incarcerated at the MDC for seventeen (17) days until his release on November 20, 2012. ECF No. 50-1 at 2-4.

Based on his booking on the Calletano Bencomo warrant, Plaintiff commenced this civil rights action on November 3, 2014 against the County, the MDC, Gonzales, the City of Albuquerque, Albuquerque Police Department ("APD"), and unnamed John/Jane Doe employees of the MDC and APD. *See* Pl.'s Compl. (ECF No. 4-1). Plaintiff's complaint raises individual and municipal liability claims pursuant to 42 U.S.C. § 1983 as well as claims under the NMTCA. Defendants removed the action to this Court on December 9, 2014. ECF No. 1. On March 18, 2015, the Court dismissed Defendants the City of Albuquerque and its subsidiary, APD, without prejudice from this action based on a joint motion filed by the parties. ECF Nos. 24, 25.

On July 2, 2015, Defendants Gonzales, the County, and the MDC moved for summary judgment on Counts IV and VI of Plaintiff's complaint. *See* Def. Mot., ECF No. 40. In Count IV, Plaintiff asserts a negligence claim under the NMTCA against the County, claiming that the actions of Gonzales and other unnamed County correctional officers resulted in the "deprivation of his rights, privileges or immunities secured by the Constitution and laws of the United States and New Mexico to remain free from false, unlawful, and/or unreasonable arrest and false, unlawful and/or unreasonable detention." ECF No. 4-1 at 12. Plaintiff further alleges in Count IV

that the County had supervisory responsibility over its employees, including Gonzales, and that it breached this duty by failing to "properly screen, hire, train, monitor, supervise and/or discipline all of its employees." *Id.* In Count VI, Plaintiff asserts a claim for the "deprivation of rights, privileges, and immunities" under the NMTCA against Gonzales and the County. ECF No. 4-1 at 14. With regard to Gonzales, Plaintiff alleges in Count VI that Gonzales's conduct caused Plaintiff's damages and that Gonzales was acting as a law enforcement officer when she violated provisions of the NMTCA. ECF No. 4-1 at 14-15. With regard to the County, Plaintiff specifically alleges that the County is liable under the doctrine of respondeat superior for violations of the NMTCA by county employees, including Gonzales, who were acting as law enforcement officers at the time they allegedly violated the NMTCA. ECF No. 4-1 at 14-15.

Plaintiff filed a response in opposition to Defendants' motion for summary judgment on September 9, 2015.[2] *See* Pl. Resp., ECF No. 52.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-

---

[2] Plaintiff failed to comply with the Court's Local Rule regarding the format of a response brief. *See* D.N.M.LR-Civ. 56.1(b) (stating that "[e]ach fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed . . . . The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.").

moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (quotation omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

### III.  ANALYSIS

The NMTCA "preserves sovereign immunity against tort claims for state governmental entities and public employees acting in the scope of their duties," except as that immunity is waived by Sections 41-4-5 to -12 of the NMTCA. *Fernandez v. Mora-San Miguel Elec. Coop., Inc.*, 462 F.3d 1244, 1250 (10th Cir. 2006); NMSA 1978, § 41-4-4(A) (2001). The only waiver asserted by Plaintiff is Section 41-4-12 of the NMTCA, which waives sovereign immunity for tort claims "caused by law enforcement officers while acting within the scope of their duties." *See* NMSA 1978, § 41-4-12 (1977); *see* Pl.'s Compl. ECF No. 4-1 at 14. "[I]n order to state a tort claim under the waiver of immunity set out in Section 41-4-12, a plaintiff must demonstrate that the defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 7, 916 P.2d 1313. Because "[a]n entity or agency can only act through its employees," Plaintiff's NMTCA claims against the County rest on the County's potential liability for Gonzales's conduct. *See Abalos v. Bernalillo Cnty. Dist. Attorney's Office et al.*, 1987-NMCA-026, ¶ 18, 734 P.2d 794.

Defendants argue they are entitled to summary judgment on Counts IV and VI of Plaintiff's complaint because Gonzales is not a law enforcement officer as that term is defined

under the NMTCA, and alternatively, that even if she were a law enforcement officer, Gonzales did not commit any of the enumerated torts for which immunity is waived for law enforcement officers under the NMTCA.[3] Defs.' Mot. at 3, 10-16; Defs.' Reply at 6-12 (ECF No. 60). In response, Plaintiff contends that Gonzales is a law enforcement officer within the meaning of the NMTCA and further, that there are genuine issues of material fact as to whether she committed any of the torts for which immunity is waived for law enforcement officers under the NMTCA. Pl.'s Resp. at 7.

Thus, the threshold – and as it turns out, dispositive – inquiry for the Court is whether Gonzales, as a Corrections Technician, is a law enforcement officer for purposes of the waiver set forth in Section 41-4-12 of the NMTCA. A law enforcement officer is defined in the NMTCA as a:

> full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, *whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes*, or members of the national guard when called to active duty by the governor.

NMSA 1978, § 41-4-3(D) (2015) (emphasis added). New Mexico courts have construed this definition "strictly." *See Rayos v. State ex rel. NM Dep't of Corr. et al.*, 2014-NMCA-103, ¶ 8, 336 P.3d 428. "The immunity waiver for law enforcement officers requires that the defendants' principal duties, those duties to which they devote a majority of their time, be of a law enforcement nature." *Id.* (citing *Weinstein*, 1996-NMSC-021, ¶ 8). Thus, the Court must

---

[3] With regard to Count IV, Defendants also argue that the County is immune from tort liability under the NMTCA for simple negligence claims. Defs.' Mot. at 6-7. The Court need not reach this argument because, as stated earlier, the County's liability in Counts IV and VI rests on Gonzales's conduct and whether she is a law enforcement officer for purposes of the waiver set forth in Section 41-4-12. *See Abalos*, 1987-NMCA-026, ¶ 23 (stating that an entity may be named in an NMTCA action if the plaintiff can show "(1) a negligent employee who meets one of the waiver exceptions" and "(2) an entity that has immediate supervisory responsibilities over the employee.").

"determine the duties upon which the employee spends the majority of his or her time (principal duties) and consider the character of those principal duties against the admittedly amorphous standard of the duties and activities traditionally performed by law enforcement officers." *Id.* "There is no exhaustive list of activities that fit within the law enforcement mold." *Id.* However, as the Tenth Circuit observed in *Fernandez*, the New Mexico Supreme Court has considered traditional law enforcement activities to "include preserving the public peace, preventing and quelling public disturbances, [and] enforcing state laws, including but not limited to the power to make arrests for violation of state laws." *See Fernandez*, 462 F.3d at 1251 (citing *Anchondo v. Corr. Dep't*, 1983-NMSC-051, ¶ 8, 666 P.2d 1255).

In this case, the Court will consider the MDC's job description for corrections technicians as well as the deposition testimony provided by the parties to determine whether Gonzales is a law enforcement officer for purposes of the NMTCA. *See Rayos*, 2014-NMCA-103, ¶ 8 (stating that courts may consider departmental job descriptions, affidavits, statutes or regulations – among other items – in determining the duties of public employees). The job position summary states that a corrections technician "perform[s] duties involved with the intake and release of inmates into the Metropolitan Detention Center system; maintain[s] security of records and personal property associated with these processes[;] [p]erforms a variety of administrative duties such as answering telephones, typing memoranda and other documents, data entry, cash handling, and filing as needed." ECF No. 40-2. The duties and responsibilities are specifically enumerated in the job description as:

1. Review, interpret and process legal documents, court orders, and arrest documents using applicable records management systems.
2. Collect, prepare and review data for statistical purposes and report to local, state and federal law enforcement agencies.
3. With high degree of accuracy, enter, cancel, and modify reports using applicable electronic record management systems.

4. Process and file all incoming documentation and maintain records according to established rules and regulations.
5. Receive, account for and release money, personal property and clothing submitted to MDC at booking; check property for safety hazards and secure items.
6. Maintain accurate records and logs of all personal property; retrieve and gather personal property for inmates being released.
7. Investigate and research missing or lost personal property.
8. Maintain security of work areas by limiting access to authorized personal only; maintain and control access to files.
9. Provide exceptional customer service to outside agencies, the public, coworkers, etc. by providing appropriate information according to policy and procedures.
10. Provide typing/word processing assistance for the department; answer telephone, transfer calls and take messages when necessary.
11. Maintain work area in a clean and orderly manner.

*Id.* This job description is consistent with Gonzales' description of her job duties in her deposition:

> [As a corrections technician], we either work in records which processes documentation for release or intake of inmates' files. Booking is when we process their actual – when we talk to inmates and actually process them into our system. And property is when we take . . . their personal property and release their personal property.

Gonzales Dep. 15:24 – 16:6, May 22, 2015, ECF No. 40-1.[4]

After careful review of the evidence in the record, the Court concludes that Gonzales is not a law enforcement officer within the meaning of the NMTCA for a number of reasons. First, it is clear that Gonzales's duties are primarily administrative or clerical in nature in that she is responsible for inputting information into the MDC's record management systems, maintaining the personal property of inmates, answering telephones, providing word processing assistance and providing customer service to outside entities. These administrative duties and activities do

---

[4] The Court notes that Plaintiff set forth several facts in his response brief related to Gonzales's alleged actions in booking Plaintiff. *See* Pl.'s Resp. at 4-6. The Court does not consider these facts to be material to its analysis because "[t]he statutory requirement that the defendants be law enforcement officers does not focus on the defendants' specific acts at the time of their alleged negligence. Instead it simply requires that the defendants' principal duties, those duties to which they devote a majority of their time, be of a law enforcement nature." *Weinstein*, 1996-NMSC-021, ¶ 12.

not fit within the mold of those duties traditionally performed by law enforcement officers. *See Dunn v. State ex rel. Taxation & Revenue Dep't*, 1993-NMCA-059, ¶ 11, 859 P.2d 469 (holding that director of the New Mexico Motor Vehicle Department was not a law enforcement officer because "the vast majority of [his] time and effort are involved in administrative matters"); *see also Anchondo*, 1983-NMSC-051, ¶¶ 5-7 (holding that the secretary of corrections and warden of state penitentiary were not law enforcement officers because their principal duties were administrative in nature and they did "not deal directly with the daily custodial care of prison inmates.").

Second, there is no evidence in the record establishing that Gonzales had the authority to "make arrests for crimes," Section 41-4-3(D), or that she had actually ever done so, in her position as a corrections technician. Nor is there evidence that Gonzales was required to hold any type of law enforcement certification or that she had any authority to enforce state laws while performing her duties as a corrections technician. *See Limacher v. Spivey*, 2008-NMCA-163, ¶ 24, 198 P.3d 370 (affirming district court's determination that employee of the office of state engineer was not a law enforcement officer under the NMTCA where "she had never actually arrested anyone, her duties were mainly administrative, she had no law enforcement certification, she did not carry a gun, and her vehicle did not have police emergency lights."). Likewise, there is no indication that Gonzales was responsible for "maintain[ing] public order," Section 41-4-3(D), in the course of performing her duties as a corrections technician. *See Dunn v. McFeeley*, 1999-NMCA-084, ¶ 24, 984 P.2d 760 (interpreting the phrase "maintain public order" in Section 41-4-3(D) as "essentially the same as handling breaches of the peace").

Third, the Court is not persuaded by Plaintiff's argument that corrections technicians are law enforcement officers within the meaning of the NMTCA because they "process people into a

detention center, which holds inmates *accused* of offenses" and they "perform the first step in 'holding in custody any person accused of a crime.'" Pl.'s Resp. at 11. Plaintiff's argument rests on the portion of Section 41-4-3(D) that states that law enforcement officers include those individuals whose "principal duties under law are to hold in custody any person accused of a criminal offense." However, the Court disagrees that mere employment by a detention center facility that holds individuals accused of a criminal offense is sufficient to classify an employee as a law enforcement officer for purposes of the NMTCA. As the Tenth Circuit and New Mexico courts have emphasized, "[i]t is the employee's *primary duties* which are the crux of the inquiry." *Fernandez*, 462 F.3d at 1251; *see also Dunn*, 1999-NMCA-084, ¶ 25 (noting that New Mexico courts "have repeatedly found that a connection to law enforcement activity, even being a member of the law-enforcement team, is insufficient by itself to make one a law enforcement officer; the person's duties must directly impact public order."). Although Gonzales is employed by a facility that holds individuals accused of offenses, there is no evidence establishing that any aspect of her duties – primary or otherwise – includes responsibility for the custodial care and supervision of inmates. Furthermore, although Gonzales conducts bookings and processes paperwork for the intake of inmates, the Court finds that these actions are not directly connected with those actions that are traditionally considered law enforcement activity. *Cf. Abalos*, 1987-NMCA-026, ¶ 34 (holding that staff of district attorney's office were not law enforcement officers on the basis of "their alleged failure to timely process the paperwork [that] resulted in Moody's release from custody. An action or inaction indirectly affecting the release of a prisoner does not rise to a 'principal duty to hold in custody' under law.") (alterations omitted)).

## IV. CONCLUSION

Based on the foregoing, the Court finds that there are no issues of material fact from which it could be found that Gonzales falls within the law enforcement waiver under the NMTCA. Thus, because Gonzales is not a law enforcement officer as defined in Section 41-4-3(D), the Court concludes that the waiver of immunity for law enforcement officers in Section 41-4-12 does not apply to her or to the County. Defendants are entitled to summary judgment on Counts IV and Count VI of Plaintiff's complaint. It is therefore ordered that Defendants' Motion for Summary Judgment No. II (ECF No. 40) is **GRANTED** and Counts IV and VI of Plaintiff's complaint are dismissed with prejudice.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent