IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SERGIO ALBERTO BENCOMO,

    Plaintiff,

v.                                                                 Civ. No. 14-1114 SCY/KBM

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendants Board of County Commissioners of the County of Bernalillo ("the County"), Bernalillo County Metropolitan Detention Center ("MDC"), and Violette Gonzales's Motion for Partial Summary Judgment No. I (ECF No. 39) and Motion to Dismiss under the Doctrine of Absolute Quasi-Judicial Immunity (ECF No. 41). The Court, having reviewed the motions, accompanying briefs, the relevant law, and otherwise being fully advised, concludes that Defendants' Motion for Summary Judgment (ECF No. 39) is well taken and shall be granted. Accordingly, Plaintiff's Section 1983 false arrest and false imprisonment claim (Count 1) is hereby dismissed with prejudice. As a result, Defendants' Motion to Dismiss (ECF No. 41) is denied as moot.

**I.  INTRODUCTION**

Plaintiff Sergio Alberto Bencomo asserts individual and municipal liability claims pursuant to 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights to be free from false arrest and imprisonment as well as claims pursuant to the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 to -30 (1976, as amended through 2015). Plaintiff's claims

arise out of Defendant Violette Gonzales's booking of Plaintiff into the Bernalillo County Metropolitan Detention Center ("MDC") on an arrest warrant charging "Calletano Bencomo"—an individual who it is undisputed is not Plaintiff—with, among other charges, criminal sexual penetration of a minor.

## II. FACTUAL BACKGROUND[1]

On July 18, 2011, the Second Judicial District Court for the State of New Mexico issued an arrest warrant charging "Sergio Bencomo" with one count of receiving or transferring stolen motor vehicles, one count of receiving stolen property, and one count of aggravated fleeing of a law enforcement officer. ECF No. 39-4. It is undisputed by the parties that this was a facially-valid warrant for Plaintiff. The warrant gave the following identifying characteristics: (1) male; (2) a height of five feet six inches; (3) a weight of 140 pounds; (4) black hair and brown eyes; (5) a date of birth of July 24, 1982; (6) an address of 604 Hardy Ave. SW, Albuquerque, New Mexico; (7) a social security number ending in 2384; and (8) an alias of "Sergio A. Bencomo." The warrant indicated that a cash or surety bond was set in the amount of $10,000. *Id.*

On February 9, 2012, the Second Judicial District Court issued an arrest warrant charging "Calletano Bencomo" with two counts of criminal sexual penetration of a minor in the first degree, one count of criminal sexual contact of a minor in the second degree, and one count of first degree kidnapping. ECF No. 39-3. The warrant provided the following identifying characteristics: (1) male; (2) a height of five feet two inches; (3) a weight of 160 pounds; (4)

---

[1] Except as otherwise noted, the following asserted facts are undisputed. In addition, the Court notes that Plaintiff failed to comply with the Court's Local Rule regarding the format of a response brief. *See* D.N.M.LR-Civ. 56.1(b) (stating that "[e]ach fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed . . . . The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.").

brown hair and brown eyes; (5) a date of birth of August 7, 1985; and (6) an address of 2210 La Vega SW, Albuquerque, New Mexico. *Id.* The warrant did not list a social security number or any known aliases. *Id.* The warrant indicated that a cash or surety bond was set in the amount of $100,000. *Id.*

On November 3, 2012, Plaintiff was extradited from a federal prison in Leavenworth, Kansas, to New Mexico and booked into the MDC on the two arrest warrants set forth above. ECF No. 39-1. While in federal prison in Leavenworth, Plaintiff signed a form entitled "IAD – Notice of Untried Indictment." ECF No. 39-1. The form stated that, "[p]ursuant to the Interstate Agreement on Detainers Act, you are hereby informed that the following are the untried indictments, informations, or complaints against you concerning which the undersigned has knowledge, and the source and contents of each." *Id.* The form thereafter listed only the case number and charges for Calletano Bencomo. *Id.* After signing this form, but before being extradited to New Mexico, Plaintiff sent an undated letter to the Second Judicial District Court's felony warrants department informing the court that he had received notice of the Calletano arrest warrant, that he presumed officials thought he was Calletano Bencomo, that he is not Calletano Bencomo, and that he was already incarcerated in federal prison at the time the Calletano warrant was issued. ECF No. 51-4; Pl.'s Dep. 64:1-17, May 31, 2015, ECF No. 59-3.

Plaintiff's booking at the MDC was handled by Gonzales, a corrections technician employed by the facility. It is undisputed that Gonzales booked Plaintiff on both the Calletano warrant and on Plaintiff's own warrant. ECF No. 39-2, 39-3, 39-4.

Before booking a detainee into the MDC, technicians receive a "packet" containing booking information for the detainee, including applicable arrest warrants. Gonzales Dep. 47:21-48:3, May 22, 2015, ECF No. 51-1. The packet Gonzales received for Plaintiff included

Plaintiff's undated letter to the Second Judicial District Court informing the court that he is not Calletano Bencomo.[2] Corrections Technicians are trained to use "identifiers," including name, date of birth, and social security number, during the intake process for the purpose of ensuring that the individual being booked is the individual charged in the warrant. *See* Gonzales Dep. at 30:11-13, 38:14-23, 62:21-24. Technicians are trained to verify the identifiers with the detainee. *Id.* During her deposition, Gonzales did not specifically recall verifying Plaintiff's identifiers, but conceded that she was required to do so. *See* Gonzales Dep. at 62:21-63:3.

On November 16, 2012, the Second Judicial District Court entered an Order Setting Conditions of Release on the charges for "Calletano Bencomo." ECF No. 50-1 at 6. The order released Plaintiff from custody without bond on his own recognizance, but noted that Plaintiff remained "in custody under Sergio Alberto Bencomo." *Id.* On November 19, 2012, the Second Judicial District Court entered an Order Setting Conditions of Release on the charges against Plaintiff, releasing Plaintiff pursuant to a $5,000 bond. *Id.* at 7. On November 20, 2012, MDC officials released Plaintiff from custody. *Id.* at 2 (MDC Inmate Release Form). Thus, Plaintiff was incarcerated for a total period of 17 days – from November 3, 2012 until November 20, 2012.

While Plaintiff was incarcerated at the MDC, information regarding Plaintiff's booking was released to the public. ECF No. 51 at 5 (citing Pl.'s Compl. ¶¶ 5-8). Specifically, the November 15, 2012 issue of the Albuquerque newspaper *El Semanario de Nueva Mexico*

---

[2] Defendants contend that Plaintiff points to no evidence confirming that the packet Gonzales received actually contained the letter that Plaintiff sent to the Second Judicial District Court. Admittedly, Plaintiff's evidence indicates only that he sent the letter to the court prior to his extradition and not that the letter actually was included in the packet that Gonzales received. The Court, however, consistent with its summary judgment obligation, construes the evidence in the light most favorable to Plaintiff and concludes that Plaintiff's evidence is sufficient to generate a question of fact whether the booking packet contained Plaintiff's letter.

4

published a photograph of Plaintiff and indicated next to that photograph that Plaintiff had been booked on charges of criminal sexual penetration of a minor and kidnapping. *Id.*; ECF No. 47-1.

### III. STANDARD OF REVIEW[3]

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute as to any material fact unless the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (quotation omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

### IV. ANALYSIS

Defendants move for summary judgment on Plaintiff's Section 1983 Fourth and Fourteenth Amendment false arrest and imprisonment claims, and also move to dismiss these claims on the ground that they are barred by the doctrine of absolute quasi-judicial immunity. The Court first addresses the merits of the Motion for Summary Judgment, and, because the Court grants that motion, it denies the Motion to Dismiss as moot.

A. <u>Defendants' Motion for Summary Judgment on Plaintiff's Section 1983 False Arrest and False Imprisonment Claims (Count 1) (ECF No. 39)</u>

---

[3] The Court does not set forth the standard for the Motion to Dismiss because the Court does not reach the merits of that motion.

Defendants challenge Plaintiff's false arrest and imprisonment claims against Gonzales on multiple grounds. First, Defendants argue that Plaintiff's claims fail as a matter of law because Gonzales detained Plaintiff on the charges for Calletano Bencomo pursuant to legal process and that an official's detention of a subject that is proceeded by legal process cannot support a claim for false arrest or imprisonment. Second, Defendants maintain that Plaintiff's claims for false arrest and imprisonment fail because Gonzales booked Plaintiff into MDC on his own charges and, thus, even if Gonzales also erroneously detained Plaintiff pursuant to the Calletano warrant, Gonzales nonetheless lawfully detained Plaintiff pursuant to his own facially-valid warrant. Third, Defendants contend that Plaintiff's claims fail because Gonzales had no duty to investigate the facially-valid Calletano warrant and because, on the facts before the Court, Gonzales' application of the identifiers in the Calletano warrant and her conclusion that Plaintiff was the person charged in that warrant was reasonable, or, in the alternative, if not reasonable, nonetheless shielded by the doctrine of qualified immunity.

For the reasons set forth herein, the Court holds that, while Defendants' first argument lacks merit, their second argument is compelling. The facially-valid warrant authorizing Plaintiff's arrest on his own charges shields Gonzales from Plaintiff's Fourth and Fourteenth Amendment false arrest and imprisonment claims, even though Gonzales subjectively (and erroneously) believed that she also was authorized to detain Plaintiff pursuant to the Calletano warrant and even though she actually detained Plaintiff pursuant to the Calletano warrant in addition to his own warrant. Because the Court's conclusion is dispositive, the Court declines to reach the third argument that Defendants advance.

   i) *The Calletano Warrant Does Not Serve as an Absolute Bar to Plaintiff's Section 1983 False Arrest and Imprisonment Claims*

6

Defendants argue that the Court should grant summary judgment in their favor on Plaintiff's Section 1983 Fourth and Fourteenth Amendment false arrest and false imprisonment claims arising out his booking on the Calletano charges because the Calletano warrant was facially valid and therefore insulates Gonzales from a claim that she violated Plaintiff's constitutional rights by booking him into MDC on the Calletano charges. In support of this contention, Defendants cite *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).

In *Mondragon*, the Tenth Circuit explained that a plaintiff charging the government with unconstitutional imprisonment has at least two potential constitutional claims: (1) if the plaintiff has been imprisoned without "legal" process, the plaintiff has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment; and (2) if the plaintiff has been imprisoned pursuant to legal but "wrongful" process, the plaintiff has a claim under the procedural component of the Fourteenth Amendment's due process clause analogous to a tort claim for malicious prosecution. *Id.* Defendants maintain that an arrest warrant represents "a classic example of the institution of legal process," *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008), and reason that, because Plaintiff's claim for unconstitutional imprisonment on the Calletano charges was pursuant to legal process, *i.e.*, the facially-valid arrest warrant for Calletano Bencomo, Plaintiff is precluded as a matter of law from bringing a Section 1983 claim for false arrest or imprisonment. *See id.* (citing Michael Avery *et al.*, *Police Misconduct: Law and Litigation* § 2:10 ("The Supreme Court[ has] indicate[d] that such claims [for unlawful imprisonment preceded by the institution of legal process] should not be characterized as false arrest or false imprisonment, because detention of the subject is pursuant to legal process.")).

Under Defendants' reasoning, a wrongfully-detained individual has no constitutional claim for false arrest or imprisonment if the individual is detained pursuant to *any* facially-valid warrant, no matter that, as here, the warrant may have been issued for a different person entirely. While Defendants correctly note that unconstitutional incarceration claims preceded by "legal process" generally do not support a claim for false arrest or false imprisonment, *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979), the rule governing incarceration pursuant to "legal process" does not absolutely apply in cases of mistaken identity.[4] To the contrary, a plaintiff detained pursuant to a facially-valid warrant issued for someone other than the plaintiff may prevail on a Fourth Amendment claim if the plaintiff can establish that the seizing official acted unreasonably.

In *Hill v. California*, 401 U.S. 797 (1971), the Supreme Court held that a mistaken identity arrest does not violate the Fourth Amendment if the officer's mistake as to identity was reasonable under the circumstances facing the officer at the time of the arrest. *See id.* at 802 (citation omitted). In *Hill*, police officers sought to arrest the suspect Hill, but when officers arrived at Hill's apartment, Miller, who fit Hill's physical description, was present in the apartment and Hill was not. *Id.* at 799. Despite Miller's protests that he was not Hill and Miller's production of an identification card indicating he was, in fact, Miller, the police officers at the scene believed Miller to be Hill and arrested Miller on the assumption that he was Hill. *Id.* The police officers also conducted a search of the apartment incident to the arrest, which resulted in their seizure of a number of items that were subsequently used to convict Hill of robbery. *Id.* at 799-800. Hill appealed his conviction, arguing that the evidence was not admissible because Hill,

---

[4] The "critical difference" between the torts of false arrest and malicious prosecution, "is whether there is valid legal authority for the arrest." *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1380 (9th Cir. 1998) (citation omitted). In cases of a mistaken identity arrest, even though the arrest is conducted pursuant to a facially-valid warrant, there is no legal authority for the arrest because the person arrested is not the person charged in the warrant.

8

the subject of the arrest warrant, had not been arrested prior to the search. *Id.* at 804. The Supreme Court framed the issue before it as whether Miller's arrest was constitutional and reasoned that, if Miller's arrest was constitutional, then the subsequent search was constitutional and the evidence recovered pursuant to the search was admissible against Hill. *Id*. The Supreme Court concluded that "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Id.* at 802 (internal quotation marks and citation omitted).

Courts routinely apply the reasonableness standard to cases of mistaken identity arrests, even when officers conduct the mistaken-identity arrest pursuant to a facially-valid warrant. *See e.g.*, *Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009) (explaining that "[w]hen police officers mistake a person for someone they seek to arrest, the arrest is constitutional if the officers (1) have probable cause to arrest the person sought, and (2) reasonably believe that the person arrested is the person sought") (citing *Hill*, 401 U.S. at 802) (additional citation omitted); *Patton v. Przybylski*, 822 F.2d 697, 699 (7th Cir. 1987) (applying the reasonableness standard to a mistaken identity arrest pursuant to a facially-valid warrant and holding that "[i]n these confused and ominous circumstances no reasonable finder of fact could[] infer that Przybylski acted unreasonably in arresting Patton," and noting that application of the reasonableness standard is supported by the Supreme Court's decision in *Hill*); *Morales v. Franklin Cnty. Sheriffs, et al.*, No. 2:12-CV-00580, 2014 WL 1576916, *4 (S.D. Ohio Apr. 17, 2014) (explaining that "arresting officers must have good reason to believe that the person being arrested is the person named in the warrant," that officers' execution of a warrant must be "'objectively understandable and reasonable,'" and that there are circumstances "where it would be clearly unreasonable not to investigate a claim [of] mistaken identity," such as "if the person

9

arrested did not match the physical description of the defendant on the warrant or readily available to the arresting officers because of a large difference in height, weight, racial characteristics, tattoos or the like") (quoting *Maryland v. Garrison*, 480 U.S. 79, 87, 88 (1987)) (additional citations omitted); *Garcia v. Tafoya*, No. 08-CV-0279 PJK/WDS, Mem. Op. & Order at 7 (D.N.M. Sept. 3, 2015) (holding that there are genuine issues of material fact that go to whether constitutional violations occurred and the legal "reasonableness" of the defendants' conduct of mistakenly arresting a person on a warrant for a different person); *see also Maryland*, 480 U.S. at 88 (recognizing "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants," but nonetheless holding that the officers' execution of the warrant must be "objectively understandable and reasonable"); *JAMA v. City and County of Denver*, No. 08-CV-01693-MSK-KLM, 2010 WL 3615027 *6 (D. Colo. Sept. 9, 2010) (explaining that, in the context of determining whether a plaintiff mistakenly identified as an individual named in a facially-valid arrest warrant may sustain a Section 1983 claim for unconstitutional arrest, "*Hill* addresses mistaken identity arrests and provides a general guiding principle in dealing with mistaken identity arrests, *i.e.,* that arrests premised on mistaken identity are not *per se* unconstitutional as long as the mistake is reasonable given the situation facing the arresting officer").

While Defendants argue that the Calletano warrant constitutes facially-valid "legal process" and therefore precludes Plaintiff's false imprisonment claims, the facts before the Court on summary judgment establish that Gonzales's booking of Plaintiff into MDC on the arrest warrant for Calletano Bencomo was a mistake. This mistake implicates the reasonableness standard applicable to claims of mistaken identity and not the general rule prohibiting a plaintiff

from sustaining a false imprisonment claim for an incarceration preceded by "legal process." Although most cases apply the reasonableness standard to mistaken identity *arrests*, and not to mistaken identity *bookings into a detention facility*, the rule is equally applicable to Gonzales in the context of her booking of Plaintiff into the MDC. The Tenth Circuit has held that a booking official may violate the Fourth Amendment if the official lacks an objectively apparent basis for detaining the individual. *Dry v. United States*, 235 F.3d 1249, 1259 (10th Cir. 2000) (citing *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1380 (9th Cir. 1998) (analyzing a claim for false imprisonment grounded on prolonged detention under California law and explaining that a jailer "may be liable if the jailer knows that the imprisonment is unlawful or if there is some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration"); *see also Wood v. Worachek*, 618 F.2d 1225, 1231 (7th Cir. 1980) (explaining that a jailer is liable for the illegal detention of an inmate when the jailer unreasonably detains the inmate for arraignment or release, or possesses an affirmative knowledge of the illegality of the arrest)). Accordingly, although the Calletano arrest warrant was facially valid, the warrant's validity does not, as Defendants suggest, shield Gonzales from Plaintiff's false arrest and incarceration claims. The Court therefore declines to grant Defendants summary judgment on the ground that the warrant constitutes "legal process" that serves as an absolute bar to Plaintiff's claims.

    ii) *Plaintiff's Own Facially-Valid Warrant Bars his Section 1983 False Arrest and False Imprisonment Claims*

Defendants next argue that Plaintiff's Section 1983 false arrest and false imprisonment claims fail because Gonzales booked Plaintiff into the MDC not only on the arrest warrant for Calletano Bencomo but also on the facially-valid arrest warrant for Plaintiff. Defendants contend that Plaintiff's own facially-valid warrant insulates Gonzales from suit. As noted earlier, the

11

Supreme Court held in *Baker* that a detention pursuant to a facially-valid arrest warrant generally provides a defense to a Section 1983 action for false arrest or imprisonment. *See Baker*, 443 U.S. at 143-44 (determining that plaintiff failed to allege a Section 1983 claim for deprivation of constitutional rights where plaintiff's detention was pursuant to a valid warrant that conformed to Fourth Amendment requirements). The Court agrees with Defendants' argument and finds that Plaintiff's detention pursuant to his own arrest warrant bars his Section 1983 false arrest or imprisonment claims.

The Tenth Circuit has considered the state-law formulation of false imprisonment as the starting point for determining whether a constitutional tort has occurred. *McCormick v. Farrar*, 147 F. App'x 716, 721 (10th Cir. 2005); *Pierce v. Gilchrist*, 359 F.3d 1279, 1286 (10th Cir. 2004). Under New Mexico law, "'false imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so.'" *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1207(10th Cir. 2006); *see also* N.M. Stat. Ann. § 30-4-3. It is undisputed by the parties that Gonzales had the lawful authority to detain Plaintiff in this case – indeed, Plaintiff's own facially-valid warrant provided her with that authority.

Even if the Court were to assume without deciding that Gonzales, as a constitutional matter, unreasonably booked Plaintiff into MDC on the Calletano warrant, this conclusion would not alter the fact that Gonzales had lawful authority to detain Plaintiff on his own warrant. It is well settled that "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (quoting *Whren* v. *United States*, 517 U.S. 806, 814 (1996)). This is because "evenhanded law enforcement is best achieved by the application of objective standards

of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton v. California*, 496 U.S. 128, 138 (1990), *quoted in Devenpeck*, 543 U.S. at 153. Consistent with this principle, a warrantless arrest is reasonable under the Fourth Amendment when supported by probable cause, even if the crime invoked by the officer at the time of the arrest is *not* a crime for which the officer had probable cause to arrest the suspect, provided that the objective facts known by the arresting officer at the time of arrest suggest that a person has committed *some* crime. *See Devenpeck*, 543 U.S. at 153 (explaining that a warrantless arrest is reasonable under the Fourth Amendment when supported by probable cause and that "probable cause exists where the objective facts known by the arresting officer at the time of arrest suggest that a person has committed some crime, *even if not the crime invoked by the officer at the time of arrest*"). So too, here, even if Gonzales' mistake of booking Plaintiff into MDC on the Calletano warrant was unreasonable, Gonzales' action of booking Plaintiff into MDC nonetheless was reasonable under the Fourth Amendment because, regardless of Gonzales' subjective basis for booking Plaintiff into MDC, the objective facts known to Gonzales at the time of the booking establish a reasonable basis for Plaintiff's detention—namely, Plaintiff's own facially-valid arrest warrant.

In his opposition to Defendants' summary judgment motion, Plaintiff argues that even if the Court were to conclude that his own facially-valid warrant precludes him from bringing a Section 1983 false imprisonment claim against Gonzales, the Court nonetheless should hold Gonzales liable for unconstitutional detention because he was detained at MDC longer than he would have been had been detained if Gonzales had booked him into MDC on only his own

charges.[5] Plaintiff contends that the bonds for each of the warrants differed in amount and that he remained incarcerated longer as a result of the Calletano warrant because the bond set in that warrant was $100,000, which was far greater than the $10,000 bond set in his own warrant. This difference in bond amount, Plaintiff argues, is significant because he could have posted the $10,000 bond but not the $100,000 bond. ECF 51 at 14.

If the state court had set these bonds on November 3, 2012, when Plaintiff was first transferred to MDC, Plaintiff's argument would have some force. But the opportunity for Plaintiff to post a $10,000 bond in his case did not arise until November 19, 2012, *three days after* the state court released Plaintiff on his own recognizance in connection with the Calletano case. ECF No. 50-1 at 6. Specifically, on November 16, 2012, the Second Judicial District Court entered an Order Setting Conditions of Release on the Calletano charges, and, although the court's order noted that Plaintiff was still in custody on charges for "Sergio Alberto Bencomo," the order released Plaintiff from custody on his own recognizance with no bond required on the Calletano charges. *Id.* Three days later, on November 19, 2012, the Second Judicial District

---

[5] In the case of a mistaken identity arrest pursuant to a facially-valid warrant, some courts have declined to examine the reasonableness of the original detention, but rather instead "focus [on] whether the length of incarceration is consistent with due process of law." *Morales*, 2014 WL 1576916, at *3. These decisions contemplate that unreasonably-long detentions pursuant to a facially-valid mistaken identity arrest warrant violate due process. *See, e.g.*, *id.* (citing *Gray v. Cuyahoga County Sheriff's Dep't*, 150 F.3d 579, 583 (1998) (holding that whether a 41-day incarceration deprived the plaintiff of due process depended on whether his jailers "acted with something akin to deliberate indifference in failing to ascertain that the Dwayne Gray they had in custody was not the person wanted"); *Fettes v. Hendershot*, No. 08-4419, 2010 WL 1687727 (6th Cir. Apr. 27, 2010) (holding that a two-hour custody is not actionable); *Flemister v. City of Detroit,* 2009 WL 4905904 (6th Cir. Dec. 18, 2009) (holding that a four and one-half day incarceration is not actionable); *JAMA*, 2010 WL 3614027, at *6-7 (recognizing that under *Hill* "mistaken identity arrests are governed by a 'reasonableness' standard", but dismissing the claim because *Baker* "suggests that an officer does not have an affirmative duty to investigate every claim of mistaken identity"); *Rodriguez v. Roth,* 516 F. Supp. 410 (E.D. Pa. 1981) (holding that a plaintiff detained for 30 days stated a due process claim); *Andujar v. City of Boston,* 760 F. Supp. 238 (D. Mass. 1991) (holding that a plaintiff detained for twelve days despite his repeated assertions of mistaken identity stated a due process claim)).

Court entered an Order Setting Conditions of Release on the charges contained in Plaintiff's own warrant and releasing Plaintiff from MDC pursuant to a $5,000 bond. ECF No. 50-1 at 7. The next day, after Plaintiff posted the bond, officials released Plaintiff from MDC. *Id.* These facts indicate that *either* the Calletano charges or Plaintiff's own charges would have independently resulted in Plaintiff being detained at MDC from November 3, 2012, through November 16, 2012. After November 16, 2012, *only* Plaintiff's own charges resulted in him being detained at MDC for a longer period of time—*i.e.*, from November 17, 2012, through November 20, 2012. Thus, the amount of the bond on the Calletano charges did not cause Plaintiff to remain incarcerated at MDC longer than he would have been incarcerated had he only been booked on his own charges.

The Court has concluded that Plaintiff's own facially-valid warrant provided Gonzales with a reasonable basis to book Plaintiff into MDC. Gonzales's subjective belief that Plaintiff was Calletano Bencomo, and her decision to book Plaintiff into MDC on the charges in the Calletano warrant as well as on the charges in Plaintiff's own warrant does not transform a reasonable detention into an unreasonable one. Thus, the Court holds that Defendants are entitled to summary judgment on Plaintiff's Section 1983 Fourth and Fourteenth Amendment false arrest and imprisonment claims and therefore grants Defendants' Motion for Summary Judgment on Count 1 of Plaintiff's Complaint.[6]

B. <u>Defendants' Motion to Dismiss under the Doctrine of Absolute Quasi-Judicial Immunity (ECF No. 41)</u>

Defendants have also moved to dismiss Plaintiff's Section 1983 false arrest and false imprisonment claims against Gonzales on the basis that she is shielded by the doctrine of

---

[6] The Court's holding is dispositive, and the Court therefore declines to consider Defendants' argument that they are entitled to judgment as a matter of law on Plaintiff's false imprisonment claims because Gonzales's detention of Plaintiff pursuant to the Calletano warrant was reasonable or because Gonzales is entitled to qualified immunity from Plaintiff's claims.

absolute quasi-judicial immunity. ECF No. 41 at 6-14. Defendants argue in the alternative that Gonzales is entitled to qualified immunity on Plaintiff's false arrest and false imprisonment claims. *Id.* at 14-17. As set forth above, the Court has granted summary judgment in favor of Defendants on these claims. Consequently, Defendants' motion to dismiss is moot and will therefore be denied.

## V. CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment No. 1 (ECF No. 39) is **GRANTED**, and Defendants' Motion to Dismiss (ECF No. 41) is **DENIED** as moot. Accordingly, Count 1 of Plaintiff's complaint is hereby dismissed with prejudice.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**